**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

---

| | |
|---|---|
| **JAMES STEVENS,** | |
| **Plaintiff,** | **Civil Action No. 2:26-cv-10671** |
| **vs.** | |
| **EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, Inc., and ALLY FINANCIAL INC.,** | **With Jury Demand Endorsed** |
| **Defendants.** | |

---

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, James Stevens ("Plaintiff"), by and through counsel, for Plaintiff's Complaint against Defendants Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Ally Financial Inc. ("Ally"), jointly, severally, and in solido, state as follows:

### I. INTRODUCTION

1.      Two of the Defendants, Equifax, and Experian are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and the other Defendant, Ally, is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiff seeks to recover from Defendants statutory and punitive damages, injunctive relief, legal fees, and expenses.

### II. PARTIES

2. Plaintiff is a natural person residing in Leon, Iowa is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c)**,** and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3. Upon information and belief, Defendant Equifax is a Georgia limited liability company that does substantial business in this Judicial District and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309. Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4. Upon information and belief, Experian does business in this Judicial District and is an Ohio corporation with its principal place of business in California and may be served by delivering a summons to its headquarters at 475 Anton Blvd, Costa Mesa, CA 92626. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5. Upon information and belief, Defendant Ally is a Delaware incorporated company that does substantial business in this Judicial District and may be served by delivering a summons to its Legal Department at its headquarters, 500 Woodward Avenue, Detroit, Michigan 48226. Ally is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer

credit information to consumer reporting agencies.

6.     As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and Trans Union.

### III.  JURISDICTION AND VENUE

7.     Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arising under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

8.     Venue is proper in this District, because Equifax and Experian, and Ally transact business in this District. Ally's headquarters is located in this Judicial District, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the Eastern District of Michigan as further described. 28 U.S.C. § 1391.

9.     Venue is further proper in this District, because Equifax and Experian entered into agreements with Ally in this Judicial District to receive credit reporting data concerning Plaintiff.

Any and all requests to investigate Plaintiff's dispute sent from Equifax and Experian as part of Defendants' reinvestigations were submitted to Ally's headquarters and investigated by Ally using its resources located at or closely connected to this Judicial District. Ally managed Plaintiff's auto account from this Judicial District including communicating amounts owed and conducting numerous communications via phone and letter.

## IV. FACTUAL ALLEGATIONS

10. In or around March 2015, Plaintiff secured an auto loan with Ally and assigned account number 007922*** ("Ally Auto").

11. On or around May 6, 2019, Plaintiff filed for bankruptcy protection under Chapter 13 of Title 11.

12. A redacted copy of Plaintiff's Chapter 13 Bankruptcy docket report for Plaintiff's bankruptcy case is attached hereto as Exhibit "A" and incorporated herein by reference.

13. On July 11, 2024, the Plaintiff was discharged from Chapter 13 Bankruptcy and excepted from discharge Plaintiff's secured Ally Auto loan.

14. A redacted copy of Plaintiff's Chapter 13 Discharge Order is attached hereto as Exhibit "B" and incorporated herein by reference.

15. Read in concert, Sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy Code, bar discharging certain secured debts in a Chapter 13 Bankruptcy.

16. Throughout Plaintiff's Chapter 13 Bankruptcy, under direct or indirect order from the bankruptcy, timely monthly payments were made to the Ally Auto account.

17. Sometime in October 2025, Plaintiff obtained Plaintiff's three-bureau credit report and noticed that the Equifax and Experian credit report(s) were not accurate.

18.     A redacted copy of Plaintiff's October 2025 tri-merge credit report is attached hereto as Exhibit "C" and incorporated herein by reference.

19.     Within the Tri-Merge credit report, Plaintiff noticed that Equifax reported the following inaccuracies for Plaintiff's Ally Auto account: Equifax failed to update the reporting of the Ally Auto account after Plaintiff's Chapter 13 Bankruptcy was discharged; reported an account rating of "derogatory"; and reported within the creditor remarks section references to Plaintiff's Chapter 13 Bankruptcy, despite the Plaintiff having been discharged from Chapter 13 Bankruptcy, and making payments to the secured auto debt during Plaintiff's Chapter 13 Bankruptcy.

20.     This reporting is incorrect because Plaintiff completed the required payments through Plaintiff's Chapter 13 Bankruptcy, was successfully discharged, and excepted Plaintiff's secured auto debt from being discharged; therefore, any remarks and/or references to a Chapter 13 Bankruptcy should have been removed from the Ally Auto tradeline after the Chapter 13 Bankruptcy was discharged.[1]

21.     Metro 2 guidelines require furnishers and/or credit reporting agencies to update the reporting of an account when the borrower associated to the account filed Chapter 13 Bankruptcy by first updating the Consumer Information Indicator ("CII") to "D" and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically instruct furnishers and/or consumer reporting agencies to remove any referencing to a Chapter 13 Bankruptcy and

---

[1] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct the removal of any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's Chapter 13 Bankruptcy and then continued reporting once a consumer is discharged.

22. Metro 2 guidelines have been adopted by Equifax as the industry standards, and these industry standards are followed by both furnishers and Equifax.

23. Within the Tri-Merge credit report, Plaintiff noticed that Experian reported the following inaccuracies for Plaintiff's Ally Auto account: Experian failed to update the reporting of the Ally Auto account after Plaintiff's Chapter 13 Bankruptcy was discharged; reported an account rating of "derogatory"; and reported within the creditor remarks section references to Plaintiff's Chapter 13 Bankruptcy, despite the Plaintiff having been discharged from Chapter 13 Bankruptcy, and making payments to the secured auto debt during Plaintiff's Chapter 13 Bankruptcy.

24. This reporting is incorrect because Plaintiff completed the required payments through Plaintiff's Chapter 13 Bankruptcy, was successfully discharged, and excepted Plaintiff's secured auto debt from being discharged; therefore, any remarks and/or references to a Chapter 13 Bankruptcy should have been removed from the Ally Auto tradeline after the Chapter 13 Bankruptcy was discharged.[2]

25. Metro 2 guidelines require furnishers and/or credit reporting agencies to update the reporting of an account when the borrower associated to the account filed Chapter 13

---

[2] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct the removal of any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

Bankruptcy by first updating the Consumer Information Indicator ("CII") to "D" and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically instruct furnishers and/or consumer reporting agencies to remove any referencing to a Chapter 13 Bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's Chapter 13 Bankruptcy and then continued reporting once a consumer is discharged.

26.    Metro 2 guidelines have been adopted by Experian as the industry standards, and these industry standards are followed by both furnishers and Experian.

27.    On or about November 24, 2025, Plaintiff sent direct disputes to Equifax and Experian and requested that Equifax and Experian investigate the reporting of the Ally Auto account, and Plaintiff specifically addressed the above referenced issues with the reporting stated in the above Paragraphs. Plaintiff requested that under the FCRA, Equifax and Experian conduct reasonable investigations and/or remedy the inaccuracies on Plaintiff's credit reports concerning the Ally Auto account.

28.    Redacted copies of Plaintiff's unsigned dispute letters sent to Equifax and Experian are attached hereto as Exhibits "D", and "E", and incorporated herein by reference.

29.    Equifax responded to Plaintiff's dispute on December 3, 2025.

30.    A redacted copy of Equifax's response is attached hereto as Exhibit "F" and incorporated herein by reference.

31.    Equifax's response and the updated Consumer Report showed that Equifax made none of the substantive changes Plaintiff requested in the direct dispute to Equifax, failed to

update the Ally Auto account after the Chapter 13 Bankruptcy was discharged, and continued to report references to the Chapter 13 Bankruptcy on Plaintiff's Ally Auto account.

32.     Equifax's response, or lack thereof, was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Ally Auto account and gave no explanation as to why the Ally Auto account was still reporting inaccurately.

33.     Plaintiff's inaccurate Equifax consumer report was disseminated to third parties before and/or after the instant dispute.

34.     Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Ally Auto account.

35.     Upon the Plaintiff's request to Equifax for verification and correction regarding the Ally Auto account, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiff's information, claims or evidence, and did not make any attempt to verify the reporting of the Ally Auto account substantially or reasonably.

36.     Equifax has adopted the Metro 2 reporting standard, Equifax deviated from the standard based on its conduct in this case, and by Equifax deviating from the adopted standard, Equifax injured Plaintiff's credit standing.

37.     In the alternative, Equifax failed to contact Ally, therefore, failed to perform any investigation at all.

38.     In the alternative to the allegation that Equifax failed to contact Ally, it is alleged that Equifax did forward some notice of the dispute to Ally, and Ally failed to conduct a lawful investigation.

39.     Experian responded to Plaintiff's dispute on December 2, 2025.

40.     A Redacted copy of Experian's response is attached hereto as Exhibit "G", and incorporated herein by reference.

41.     Experian's response and the updated Consumer Report showed that Experian made none of the substantive changes Plaintiff requested in the direct dispute to Experian, failed to update the Ally Auto account after the Chapter 13 Bankruptcy was discharged, and continued to report references to the Chapter 13 Bankruptcy on Plaintiff's Ally Auto account.

42.     Experian's response, or lack thereof, was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Ally Auto account and gave no explanation as to why the Ally Auto account was still reporting inaccurately.

43.     Plaintiff's inaccurate Experian consumer report was disseminated to third parties before and/or after the instant dispute.

44.     Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Ally Auto account.

45.     Upon the Plaintiff's request to Experian for verification and correction regarding the Ally Auto account, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence, and did not make any attempt to verify the reporting of the Ally Auto account substantially or reasonably.

46.     Experian has adopted the Metro 2 reporting standard, Experian deviated from the standard based on its conduct in this case, and by Experian deviating from the adopted standard, Experian injured Plaintiff's credit standing.

47.     In the alternative, Experian failed to contact Ally, therefore, failed to perform any investigation at all.

48.     In the alternative to the allegation that Experian failed to contact Ally, it is alleged that Experian did forward some notice of the dispute to Ally, and Ally failed to conduct a lawful investigation.

49.     Plaintiff elected to obtain an updated copy of Plaintiff's credit reports due to Equifax and Experian responses, or lack thereof responses.

50.     A redacted copy of Plaintiff's January 2026 Tri-Merge credit report is attached hereto as Exhibit "H" and incorporated herein by reference.

51.     Based Plaintiff's January 2026 Tri-Merge credit report, it was apparent that Equifax and Experian made none of the substantive changes Plaintiff requested in the direct dispute to Equifax and Experian failed to update the Ally Auto account after the Chapter 13 Bankruptcy was discharged and continued to report references to the Chapter 13 Bankruptcy on Plaintiff's Ally Auto account.

## V.  GROUNDS FOR RELIEF

### EQUIFAX'S VIOLATION OF THE FCRA
**(15 U.S.C. §1681e(b))**

52.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

53.     Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

54.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b)

(emphasis added).

55.     Equifax knew or should have known of Plaintiff's bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Equifax continued to prepare a patently false consumer report concerning Plaintiff.

56.     Despite actual and implied knowledge that Plaintiff's credit report was and/or is not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

57.     After Equifax knew or should have known Plaintiff's bankruptcy status, history, and/or payment history were inaccurate for Plaintiff's Ally Auto tradeline(s), it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

58.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Equifax to comply with Equifax's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters,

and attempting to decipher letters, reports, and other instruments provided by Equifax; loss of self-esteem because of Equifax's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Equifax.

59.     Equifax's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln.

60.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

## EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

61.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

62.     Equifax violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

63.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and

annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Equifax to comply with Equifax's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Equifax; loss of self-esteem because of Equifax's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Equifax.

64.     Equifax's conduct, action, and inaction, were willful, rendering it liable for statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

65.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**EXPERIAN'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681e(b))**

66.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out

herein.

67.     Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

68.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

69.     Experian knew or should have known of Plaintiff's bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Experian continued to prepare a patently false consumer report concerning Plaintiff.

70.     Despite actual and implied knowledge that Plaintiff's credit report was and/or is not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

71.     After Experian knew or should have known Plaintiff's bankruptcy status, history, and/or payment history were inaccurate for Plaintiff's Ally Auto tradeline(s), it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

72.     As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased

credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Experian to comply with Experian's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Experian; loss of self-esteem because of Experian's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Experian.

73.     Experian's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln.

74.     The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

## EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

75.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

76.     Experian violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiff's credit file after receiving actual notice of such

inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

77.      As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Experian to comply with Experian's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Experian; loss of self-esteem because of Experian's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Experian.

78.      Experian's conduct, action, and inaction, were willful, rendering it liable for

statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

79.     The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**ALLY'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

80.     Ally violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

81.     Ally further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Ally Auto account within Plaintiff's credit files with Equifax and Experian without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute of the Ally Auto account, failing to accurately respond to Equifax and Experian, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of inaccurate information to the Ally Auto account within the consumer reporting agencies reports.

82.     As a result of Ally's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history;

Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Ally to comply with Ally's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Ally; loss of self-esteem because of Ally's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Ally.

83.     Ally 's conduct, action, and inaction, were willful, rendering it liable for statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## VI.     VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

84.     Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondent superior and/or vicarious liability.

## VII.   DAMAGES

85.     Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to compensatory damages, punitive or exemplary damages may be

awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Michigan.

86.     Plaintiff respectfully requests that this Honorable Court award Plaintiff's litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

87.     The above and foregoing actions, inactions, and faults of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

88.     Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reporting about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

89.     Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

90.     Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiff.

91.     Defendants are liable unto Plaintiff for all statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to: out-of-pocket expenses; credit denials; loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates

Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Defendants to comply with Defendants' statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendants; loss of self-esteem because of Defendants' continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendants; attorney's fees; court costs; and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff prays that this Honorable Court:

A.      Enter Judgment in favor of Plaintiff and against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., and Ally Financial Inc., jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing Plaintiff's credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B.      Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.      Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

D.      Order that CRA Defendants, Equifax Information Services LLC and Experian Information Solutions, Inc., and Furnisher Defendant, Ally Financial Inc., work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanation, consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

E.      Grant such other and further relief, in law or equity, to which Plaintiff might show Plaintiff is justly entitled.

Date Filed: <u>February 26, 2026</u>

Respectfully submitted,

*/s/ Blake R. Bauer*
Blake R. Bauer
MN Bar Number 0396262
FCRA-TX@fieldslaw.com
FIELDS LAW FIRM
9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 383-1868 (telephone)
(612) 370-4256 (fax)

***Lead Counsel for Plaintiff***

***COUNSEL FOR PLAINTIFF***

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

February 26, 2026                             /s/ Blake R. Bauer
Date                                          Blake R. Bauer